Mr. Quick, if you'd help get rid of the one chair if we need to. I assume you're Mr. Shuttle? Yes. And Mr. Shuttle, you didn't appear with the clerk before court. And so, would you announce how much you wish to reserve for rebuttal? Two minutes. Okay, good. And you get a yellow sign. The time is cumulative. The clock runs straight down here. And if you're prepared, come forward. You can use the podium. It does go down, but you don't have to. You're called. Actually, the side of the podium is up. Sure. And Mr. Hanson, would you come and bring the mic down to an appropriate spot? I'll task you as an officer of the court. Some Supreme Court cases say you are. Thank you very much. That's great. Thank you. It's a little hard to fit underneath. No, no, no, no, no. However you want to do it, it's fine with us. Kind of make do. No, we're fine. All right. Are you prepared? Yes. Okay, proceed. May it please the court, counsel, my name is James Shuttle, Jr. I represent Cortez Ingram in this criminal appeal. I did not represent Mr. Ingram in the district court, so I had to take a fresh look at the entire record. In this case, the transcripts, the pleadings, and in the first argument on appeal that came to my mind was the plea agreement, the way it was written, it did not cite 11C1C, which is binding on the district court. However, the language that I have highlighted in the brief matches the 11C1C. It says it gives a specific sentence, and it says whether it's above the guidelines, this is the sentence that we think is the appropriate disposition of this case. Now, this case has, it's the most unique case that I've ever come across. I've never seen a case with four PSRs in it. There were two or three amended PSRs, and the final PSR had recommended and was, of course, was not binding on the court, but recommended an upward variance based upon the uncharged conduct, which is part of the plea agreement between the prosecutor and the defense attorney in this case. Mr. Schottel. Yes. You know, we are supposed to apply ordinary contract principles to the plea agreement itself, right? And in this particular plea agreement, there is a spot where it says the court is neither a party to the agreement nor bound by the agreement. And the judge asked about it before he accepted the plea agreement, before the change of plea was entered. And so how do you get around that? I mean, because in the way that he asked it, I mean, he literally asked the defendant, he says, you understand I could sentence you, I'm not bound by this, and I could sentence you to more or less. And he said, yes, I understand. And so, I mean, trying to convert that into an 11C1C without that ever being referenced in the agreement seems a little hard. So how would you go about doing that? Well, I was looking at the sentencing transcript as a whole, and I can't go into the mind of the district judge on what his thoughts were or what his interpretation of the agreement was. Well, he pretty clearly stated that he thought he wasn't bound by the agreement, and he also pretty clearly had some dispute with the Garland memo on the prosecution of cases involving 851 conduct, right? And so once he says that, I mean, you know, the defendant had to understand I could sentence you to more, I think. You know, if he didn't understand that, then he's not competent, and we are having a different argument here. But also, defense counsel's got to understand when he starts talking about 851 conduct, you know, he's got to understand that the judge is contemplating something untoward for his client's position. Well, as you bring that up, I do remember the transcript that defense counsel did raise an issue when the judge was discussing that part of the case. And I cannot remember the defense counsel's words, whether he objected. Yeah, I think he did object. And I think that what he was talking about at that point is he says, you know, that conduct was discussed. It was all part of the plea agreement. I think that's kind of what he said, but I don't have the transcript right in front of me. I could get it in a second, I think. And the odd thing is when the parties drew up the plea agreement, they had drew up the plea agreement with the understanding, based upon their calculations, that the defendant was going to be a career offender. However, when the PSR came out, that turned out to be true, not to be true. So the judge did allow the parties to reconvene and meet and come up with another recommended sentence for the judge to consider. And they did that. I'm sorry. And then also after they did that, I believe the government even filed a sentencing memorandum that argued why this sentence is the appropriate sentence for Mr. Ingram. Counsel, let me ask you. The other side on the first point relies almost entirely on the Shardelli case. Would you want to respond to it? Sure, Judge. If I can go back to it. It was their main case. I just looked the brief, 1112, of their brief. Yeah, and I don't have the facts of that. That's fine. Proceed with your argument. Okay. Proceed. I had read the brief, which was written by counsel who prosecuted the case below, who had thought that 87 months was the appropriate disposition for this case. On the other side, I know my time's getting low on the second point. I think it's also very important. As the judge sentenced Mr. Ingram to 123 months imprisonment, when the guideline range was 70 to 87, the plea agreement proposed 87, the top of the guidelines. But there is case law, and I know I cited it in my brief, that five levels is an extreme variance. And in order for this court to affirm that much of a variance, that there has to be exceptional circumstances. I do not think that the judge had articulated exceptional circumstances for such a variance from 70 to 87, all the way up to 123 months. It was very significant. The comment the judge made that made me concerned was that he said something to the fact that it's very rare in this district for the probation officer to recommend an upward variance. I've been doing this for 15 to 20 years, and it's not rare for me. I don't know what kind . . . maybe the kind of cases are in front of him, but it's a common thing. You know, if you look at where the judge was here, the district judge, he basically said that. And he also said . . . he talked about the balancing of the branches and their role to play. And he talked about 851 is a statutory enactment, and it's the will of the Congress, and it was signed into law. And so it's part of the law he has to apply. He thought that the job of prosecution was in the hands of the executive branch, but he thought that sentencing ultimately was his. And that he saw two competing suggestions as to what the appropriate sentence was. And he thought that your client had received a benefit by not facing the longer guideline range and by not facing the longer maximum penalty and mandatory minimum. And that, therefore, as he balanced it all out, this sentence seemed to be appropriate. And it's your argument that that is overwhelmed by the comment about the probation officer. Is that correct?  That was my interpretation. And I believe I did include that in my brief as well. I'm well into my rebuttal, so I'll stop here. Thank you, Judge. And we'll make it one minute, sir, so you know to prepare. It will be one minute. It rounds up. Thank you, Judge. One minute. My pleasure. Mr. Van Ostrin. May it please the Court. I'm Court Van Ostrin on behalf of the United States. This Court just asked a very good question, which is, when the plea agreement makes clear on its face that it arises under Rule 11.1c, and when the judge repeatedly reiterates, both in the plea hearing and in the sentencing hearing, that it is not binding on the Court, doesn't that give the defendant notice that it is not, in fact, binding? That's exactly right. Applying basic contract principles, this document, the plea agreement, was replete, with references to the fact that it was not binding on the Court. The Court was not a party to the agreement. And then, again, as the Court pointed out, in the plea hearing, not only did the Court ask directly, do you understand that I am not a party to and not bound by this agreement, the Court also discussed the statutory maximum for this particular offense. So the defendant understood what the possible range of punishments was, and that the district judge was not bound to uphold the party's recommended sentence. The recommended sentence was exactly that. It was a joint recommendation of the parties, and the district court did not err by choosing to depart upward. The Court also asked, didn't the district court have a number of reasons that it pointed to for this upward departure? In fact, it did. The district court sort of went to great pains to calculate and to have the PSR indicate what the possible range of punishment was, had this been charged as two separate occurrences, both the conduct in May of 2021 and in February of 2022. What that calculation revealed was that potentially Mr. Ingram could have been facing up to 176 to 204 months of incarceration. Instead, the government and Mr. Ingram jointly recommended a sentence of 87 months. The district court explained that on the basis of uncharged conduct, which this court has repeatedly reiterated, including in the Brave Bull decision, is a perfectly valid basis for an upward departure. That's what the district court did. There was no error in that procedure. I'll just briefly address the third point that Mr. Ingram raises on appeal, which is the fact of the probation office's recommendation as to a sentence and whether that had to be disclosed to Mr. Ingram. In fact, what the federal rules of criminal procedure make clear is that as long as there is a local rule or an order in the case that allows that to be kept confidential, it can be kept confidential. In this case, we have both. We have a local rule in the Eastern District of Missouri that's 13.01 that says it has to be kept confidential. We have an order from the court, a standing order, that says that those recommendations are to be kept confidential as well. I am more than happy to address any other concerns that the court may have, but otherwise I would point the court to the arguments that are made in our briefs. Mr. Ingram raises three points on appeal. All of those points fail. There was no error here, and we would ask this court to affirm. Thank you. Let me see if there are questions. Questions? No questions. Mr. Van Ostrin, thank you for your argument. Thank you. Mr. Shettle, you again have the one minute. Thank you, Mr. Van Ostrin, for lowering that. Thank you. All right. Thank you, Jim. I did just want to point out on the second point and go back to the size of the variance. In the Madaris case and the Larrabee case, this court has held that, quote, as the size of the variance departure grows, so too must the reasons that warrant it. I believe that . . . Those are pre-Gaul cases, right? Madaris is 2006. What was the other case you said, counsel? Madaris and . . . And then the Wiley case is 2007. It's 2007, and they are pre-Gaul. Right. And this court . . . no history lesson here, but this court . . . Right. But I'm going to give a slight one. Pre-Gaul, we tried to police the Rangers. Right. And Gaul is an appeal from this circuit. And the Supreme Court said, no, we're not to. And so some of that language is from that era, just so you know. Right. Yeah. And, counsel, your time has now expired. Okay. Thank you very much for your argument. Thank both counsel for your argument. Case 23-1514 is submitted for decision for the court. All right. Ms. McKee.